IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RICKY HAYES,

    Plaintiff,

v.                                                                                                                                                     No. 1:22-cv-01272-STA-jay

MANITOWOC FSG
OPERATIONS, LLC,

    Defendant.

---

## REPORT AND RECOMMENDATION

---

Plaintiff filed this pro se Complaint on December 8, 2022. ECF No. 1. This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to conduct a screening of the Complaint because Plaintiff sought and received in forma pauperis status. The undersigned **RECOMMENDS DISMISSING IN PART** Plaintiff's Complaint. Specifically, the undersigned recommends dismissing Plaintiff's Age Discrimination in Employment Act (ADEA) retaliation claim and Plaintiff's Americans with Disabilities Act (ADA) discrimination claim, while allowing Plaintiff's discrimination claim pursuant to the ADEA and his retaliation claim pursuant to the ADA to proceed.

                                                  **I.**     **BACKGROUND**

Plaintiff, a welder, alleges that his employer retaliated against and harassed him for taking time off work due to a neck injury, and then terminated him and filled Plaintiff's position with a

less qualified, younger replacement. Plaintiff suffered from a pre-existing workplace neck injury that he claims was aggravated as a result of an increased production requirement. ECF Nos. 1 at ¶ 10, 1-1 at 5, 20, 25. The neck pain ultimately resulted in Plaintiff taking medical leave for two weeks from February 24 to March 10, and another leave of absence from April 30 to May 13. ECF No. 1-2 at 2. Plaintiff claims that he had requested a "helper," but upon his return to work, none was provided. ECF No. 1-2 at 2. He also states that while he was filling out paperwork related to his neck injury/pain in the safety office, the assistant plant manager stated "[there wasn't] nothing [sic] wrong with" Plaintiff. ECF No. 1-1 at 9.

In addition to being accused of not actually having an injury, Plaintiff states that in June 2021 he received a performance report that included ratings lower than they should have been. ECF No. 1-1 at 16-17. On July 12, 2021, the assistant plant manager allegedly told Plaintiff and another employee they were performing their work "all wrong and started [y]elling and cussing . . . ." ECF No. 1-1 at 7, 12. The next day, Plaintiff received notification that he would not be receiving a raise. ECF No. 1-1 at 13. After Plaintiff attempted to complain to Human Resources, he was suspended then terminated. ECF No. 1-1 at 11, 13, 14.

Plaintiff claims that his position was filled, and the replacement did not have the same skills and qualifications as he did. The replacement has no experience in tig welding, while Plaintiff has thirty-three years of experience in Defendant's employ. ECF No. 1-1 at 25. In the Charge of Discrimination, Plaintiff notes he "believe[s]" his replacement "was about thirty years old." ECF No. 1-2 at 1. Plaintiff states he is fifty-six years old. ECF No. 1 at 4.

Plaintiff alleges facts that give rise to four potential claims: (1) an age discrimination claim pursuant to 29 U.S.C. § 623(a)(1); (2) an age-based retaliation claim pursuant to 29 U.S.C. § 623(d); (3) a disability discrimination claim pursuant to 42 U.S.C. § 12112(a); and (4) a

disability-based retaliation claim pursuant to 42 U.S.C. § 12203(a).

## II.  SCREENING STANDARD

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action:

(i)  is frivolous or malicious;
(ii)  fails to state a claim on which relief may be granted; or
(iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted

by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Under § 1915(e)(2)(B), the Court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America,* No. 3:10–1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999).

### III.   PROPOSED CONCLUSIONS OF LAW

As threshold matters, the Court must first determine whether jurisdiction is present and

whether this action was brought timely. First, the Court must have jurisdiction to hear Plaintiff's claims because federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Litigants must establish that the court has subject matter jurisdiction over their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331–1332; 28 U.S.C. § 1367. Federal question jurisdiction is present when a party asserts a cause of action arising under the United States Constitution or a federal statute. 28 U.S.C. § 1331. Because Plaintiff raises claims pursuant to federal law, there is federal question jurisdiction in this case.

Next, the ADEA and ADA both set out time limitations that a plaintiff must comply with in order to proceed in litigation. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 519 (6th Cir. 2021) (stating that there is a "long-standing principle that where the statute creating a cause of action also fixes a limitation of time in which an action may be brought, the limitation is regarded as a part of the substantive law of the cause of action." (internal citations omitted)). These timelines serve as statutes of limitation on a plaintiff's action. *Jackson v. Richards Med. Co*., 961 F.2d 575, 578 (6th Cir. 1992) (citing *Wright v. State of Tennessee*, 628 F.2d 949 (6th Cir. 1980)).

Under the ADEA, before a plaintiff may individually file a civil suit in federal court, he must first file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d). The charge "shall be filed within 180 days after the alleged unlawful practice occurred . . . ." 29 U.S.C. § 626(d)(1)(A). Alternatively, if the plaintiff is in what is known as a "deferral state," then the plaintiff has 300 days to file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(1)(B); *Jackson*, 961 F.2d at 578. Because Tennessee is a deferral state, a plaintiff has 300 days from the date of the alleged discriminatory conduct to file his charge of discrimination. *Id*. at 578-79; *see also Speck v. City of Memphis*, 594 F. Supp. 2d 905, 916 (W.D. Tenn. Jan. 6, 2009) ("Where alleged unlawful

5

practices including discrimination, hostile work environment, and retaliation occur in a 'deferral state' like Tennessee . . . the plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act.").

Under the ADA, the same timelines apply for the same reasons. The statute provides that the same procedures outlined in 42 U.S.C. § 2000e-5 apply to ADA claims. 42 U.S.C. § 12117(a). Thus, Plaintiff had "three hundred days after the alleged unlawful employment practice occurred" to file his claim with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *see Phillips v. Shelby Cnty. Gov't*, No. 2:21-cv-02730, 2022 U.S. Dist. LEXIS 116714, at *13 (W.D. Tenn. July 1, 2022); *see also Ratliff v. Speight Fam. Med., LLC,* No. 2:21-cv-02338, 2021 U.S. Dist. LEXIS 257350, at *6 (W.D. Tenn. Oct. 26, 2021).

If the EEOC declines to prosecute an employment discrimination case on behalf of a plaintiff, the Commission will issue a Right to Sue letter. 29 C.F.R. § 1601.28(b). The plaintiff has ninety days from receipt of the Right to Sue letter to file a civil lawsuit in federal court. 29 U.S.C. § 626(e); *Farajolah v. Victory Auto Grp*., No. 1:20-cv-01277, 2021 U.S. Dist. LEXIS 224825, at *3 (W.D. Tenn. Nov. 22, 2021).

Here, the employer allegedly suspended Plaintiff on July 13, 2021, and then terminated Plaintiff on July 15, 2021. Plaintiff then filed his charge of discrimination with the EEOC on May 4, 2022. The filing took place 295 and 293 days, respectfully, after the challenged conduct. Thus, Plaintiff's charge of discrimination was timely filed with the EEOC.

Plaintiff then had ninety days to file the instant lawsuit upon receipt of the EEOC's Right to Sue letter. The letter arrived to Plaintiff on September 16, 2022, and he filed his Complaint eighty-three days later on December 8, 2022. Therefore, Plaintiff's Complaint was timely filed.

## A. AGE DISCRIMINATION UNDER THE ADEA

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Individuals protected by the ADEA are "limited to those at least 40 years of age." 29 U.S.C. § 631(a).

Age discrimination can be established by direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Where a plaintiff attempts to establish discrimination by direct evidence, they must do so "by a preponderance of the evidence . . . that age was a 'but-for' cause of the challenged employer decision." *Geiger*, 579 F.3d at 621 (quoting *Gross v. FBL Fin. Serv., Inc.*, 129 S. Ct. 2343, 2351 (2009)).

However, where a plaintiff attempts to establish discrimination by circumstantial evidence, the burden-shifting framework established in *McDonnell Douglas* applies. *Id*. at 622. Under this framework, the plaintiff must show: "1) that he was a member of a protected class; 2) that he was discharged; (3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." *Id*. Once a plaintiff makes a prima facie showing of the aforementioned elements, the burden shifts to the defendant-employer to "articulate some legitimate, non-discriminatory reason for the termination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (internal quotations omitted). "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Blizzard*, 698 F.3d at 283 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)).

The Court reads Plaintiff's Complaint to raise an age discrimination claim based on circumstantial evidence. This is because there are no facts included in Plaintiff's Complaint that

7

show any of the supervisors directly stated Plaintiff was being terminated because of his age. As such, the Court will evaluate Plaintiff's Complaint under the burden-shifting framework elements outlined above.

First, the Court notes that Plaintiff is a member of the protected class encompassed by the ADEA because he is fifty-six years old and thus over the minimum age established by the federal statute. Therefore, the first element is established. Second, Plaintiff represents that he was terminated from his employment. Termination is an adverse employment action, therefore, the second element is established. Third, in reading the facts in the light most favorable to the Plaintiff, the Court believes he was qualified for the position he held. This is supported by the facts Plaintiff included regarding his length of employment, and apparent qualifications as a welder.

Finally, Plaintiff alleges his replacement was thirty years old which is "significantly" younger under the Sixth Circuit standard. As such, Plaintiff has pled sufficient facts to state a plausible claim of age discrimination by Defendant-employer. As such, the Court **RECOMMENDS** Plaintiff's age discrimination claim against Defendant be allowed to proceed.

B.  RETALIATION UNDER THE ADEA

The ADEA also protects employees from retaliation. 29 U.S.C. § 623(d). In order to make a prima facie showing of retaliation, a plaintiff must establish the following elements: "(1) [he] engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Blizzard*, 698 F.3d at 288 (internal quotations omitted).

The first element is satisfied where a plaintiff "prove[s] that [he] took an overt stand against suspected illegal discriminatory action . . . ." *Id*. This means that "an employee may not invoke the

protections of the Act by making a vague charge of discrimination." *Id*. (internal quotations omitted). Oral complaints of age discrimination may qualify. *Id*.

Under the causal connection element, a plaintiff must show "that a causal link exists between [the plaintiff's] protected activity and his termination." *Sander v. Gray TV Grp., Inc.*, 478 Fed. Appx. 256, 267 (6th Cir. 2012). This means that "a plaintiff must offer evidence that is 'sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Sander*, 478 Fed. Appx. at 267 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). At times, a temporal proximity between the protected activity and the adverse action may be sufficient to establish a causal connection. *Id*. The same burden-shifting framework applies to retaliation claims as discrimination claims. *Id*.

In order to state a plausible claim for retaliation under the ADEA, Plaintiff first needed to show that he engaged in a protected activity. Here, Plaintiff attempts to show he engaged in a protected activity by stating he complained to human resources personnel that the assistant plant manager was harassing and bullying him. However, Plaintiff explicitly states that this harassment and bullying was related to Plaintiff's physical disability, *not* his age. Thus, Plaintiff failed to establish the first element of an ADEA retaliation claim.

Second, Plaintiff needed to establish that Defendant was aware Plaintiff was making claims of age-based discrimination. Again, Plaintiff failed to include sufficient facts to show Defendant was aware of *age-based* discrimination claims made by Plaintiff. While it is clear Plaintiff raised, at a minimum, oral complaints related to his treatment in the workplace, all of those complaints appear to have been related to his physical ailments—not his age.

The third element is established by Plaintiff's representation that he was terminated from his position. However, there are insufficient facts to establish the fourth element of causation.

9

Plaintiff needed to show the causal link between the protected activity and the adverse employment action. Because there appears to be no protected activity related to Plaintiff's age, there can be no causal link between that activity and his termination. As such, Plaintiff's facts fail to establish the required causation. Therefore, the Court **RECOMMENDS DISMISSAL** of Plaintiff's ADEA retaliation claim.

### C. DISABILITY DISCRIMINATION UNDER THE ADA

The ADA likewise forbids discrimination "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to state a prima facie case for discrimination under the ADA, "a plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016).

To establish he is disabled under the meaning of the ADA, a plaintiff "must show that he has (1) a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such an impairment, or (3) is regarded as having such an impairment." *Booth v. Nissan N. Am. Inc.,* 927 F.3d 387, 393 (6th Cir. 2019) (cleaned up). What is clear under Sixth Circuit precedent is that where the major life activity affected by a disability is the activity of working, a plaintiff is not considered disabled simply because he cannot "perform a discrete task or a specific job." *Booth,* 927 F.3d at 394. Instead, a plaintiff must show that the "impairment limits [his] ability to perform a class of jobs or a broad range of jobs." *Id*. (internal quotations omitted). The EEOC highlights this point in its regulations, providing that "a plaintiff cannot claim a disability by simply '[d]emonstrating a substantial limitation in performing the unique aspects

of a single specific job.'" *Id*. (quoting 29 C.F.R. § 1630). The Sixth Circuit has referred to this requirement in the context of employment discrimination as a "stringent standard" and held that "[t]he inability to perform a single, particular job . . . does not constitute a substantial limitation in the major life activity of working." *Ferrari*, 826 F.3d at 893 (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008)).

Like a claim for age discrimination, a plaintiff may seek to prove disability discrimination either directly or indirectly under the ADA. *Id.* at 891. Where there is direct evidence that an employer discriminated against an employee because of his disability, then:

> the plaintiff . . . bears the burden of establishing that he or she is disabled and otherwise qualified for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged essential job requirement eliminated; or c) with a proposed reasonable accommodation.

*Id*. (internal quotations omitted).

Where a plaintiff seeks to prove discrimination through the "indirect method," the plaintiff is subject to the burden-shifting framework from *McDonnell Douglas*. *Id*. A prima facie showing of indirect disability discrimination requires the plaintiff show:

> (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Id*. at 891-92.

An adverse employment decision is "a materially adverse change in the terms of [the employee's] employment." *Hurtt v. Int'l Servs.*, 627 Fed. Appx. 414, 419 (6th Cir. 2015) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). Once a plaintiff makes such a showing, the burden shifts to the employer "to offer a legitimate explanation for its action." *Id*.

11

at 892 (internal quotations omitted). Then it is up to the plaintiff to show such an explanation is a pretext for disability discrimination. *Id*.

Regardless of whether Plaintiff is attempting to argue direct or indirect disability discrimination, he needed to first establish that he is disabled. Plaintiff could have shown that he suffers from "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). In *Adams v. Potter*, the Sixth Circuit considered a disability claim by a federal postal worker. 193 Fed. Appx. 440, 442-43 (6th Cir. 2006). There, the employee was limited (by doctor's orders) to not lift more than fifty pounds, stand for a prolonged period of time, or engage in repetitive "bending, twisting, [or] stooping." *Adams*, 193 Fed. Appx. at 444. The Sixth Circuit found, however, that the employee failed to establish a disability because he could "care for his personal hygiene, fish, drive, work as a paralegal, play non-contact sports, and engage in ordinary activities of daily living . . . ." *Id*. (internal quotations omitted). Had the Court found the postal employee qualified as "disabled" per the statutory definition, it reasoned such "a definition . . . would cover almost everyone who suffers from back problems." Instead, the Circuit determined that "[s]uch a definition is too broad . . . ." *Id*.

The undersigned recommends a similar reading of the facts here. Plaintiff complains of a neck injury that causes him pain. At most, Plaintiff has established that the injury limits the speed at which he can work or the pace at which he can meet production quota. Plaintiff did not plead that the neck injury restricts his daily activities. As Plaintiff argues, apparently all welders suffer from some type of neck pain due to the protective equipment they wear. ECF No. 1-1 at 14-15. Including pain that is ubiquitous in a given field as a condition that would qualify an employee as disabled is, as the Sixth Circuit stated in *Adams*, "too broad." *Adams*, 193 Fed. Appx. at 444.

Plaintiff also could have established a disability by showing "a record of such an

impairment . . . ." 42 U.S.C. § 12102(1)(B). While Plaintiff does note that a previous neck injury was documented, he did not include in his filings any such records. ECF No. 1-1 at 15. However, what is clear is that whatever such record may show, it cannot establish that Plaintiff is *disabled* per the ADA's definition as to his neck injury. To succeed on a record of impairment theory, the plaintiff is still required to show that "at one point [he] had (or was classified as having) an impairment that substantially limited a major life activity." *Spence v. Donahoe*, 515 Fed. Appx. 561, 570 (6th Cir. 2013) (citing 29 C.F.R. § 1630.2(k)). Here, Plaintiff only notes that his neck injury is recorded, and at some point, the injury qualified him for workers' compensation benefits. That is insufficient to establish that the prior neck injury amounted to a *disability*. As such, Plaintiff has failed to show there is a record of a disability.

Finally, Plaintiff could have established a disability, as protected by the ADA, if he showed that he was "regarded as having" a disability. 42 U.S.C. § 12102(1)(C). Under this standard, a plaintiff "can recover . . . if he can show that the employer: (1) mistakenly believes that the plaintiff has a physical impairment that substantially limits one or more major life activities; or (2) mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *EEOC v. Burlington Northern & Santa Fe Ry. Co.*, 621 F. Supp. 2d 587, 593 (W.D. Tenn. 2009). Here, Plaintiff's facts clearly show that his supervisors did not regard him as suffering from a disability. Instead, it appears his employers believed the exact opposite: they thought there was "nothing wrong" with Plaintiff. ECF No. 1-1 at 9.

Because Plaintiff failed to state a plausible claim that he is disabled, the undersigned **RECOMMENDS DISMISSING** his discrimination claim under the ADA.

### D. RETALIATION UNDER THE ADA

Under the ADA it is unlawful to "discriminate against any individual because such

individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). It is also "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by" the ADA. 42 U.S.C. § 12203(b). To proceed with a retaliation claim:

> the plaintiff must show that (1) he engaged in activity protected by the [ADA]; (2) the defendant knew of this exercise of plaintiff's protected rights; (3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was causal connection between the protected activity and the adverse employment action.

*Hurtt*, 627 Fed. Appx. at 422.

The same burden-shifting framework applies in ADA retaliation claims as in other employment discrimination claims. *Id*. (quoting *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997)). Additionally, requests for reasonable accommodations qualify as protected activities under the ADA. *Id*. Importantly, a plaintiff need not prove that he is disabled to proceed on a retaliation claim. Instead, a plaintiff may proceed based upon a "showing of a good-faith request for reasonable accommodations." *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 777 n.8 (6th Cir. 2011). In the context of a retaliation claim, an adverse employment action is "'a retaliatory action [that is] enough to dissuade a reasonable person from engaging in the protected activity . . . .'" *Hurtt*, 627 Fed. Appx. at 423 (quoting *A.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013)).

To proceed with his retaliation claim under the ADA, Plaintiff needed to first establish that he engaged in an activity protected by the ADA. This is not "a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engage in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d

14

1025, 1046 (6th Cir. 2014). These are "action[s] taken to protest or oppose a statutorily prohibited discrimination." *Rorrer*, 743 F.3d at 1046 (internal quotations omitted). In the Sixth Circuit, "requests for accommodation are protected acts." *Hurtt*, 627 Fed. Appx. at 422. This does not require a plaintiff to *actually* be disabled; it is sufficient that the plaintiff "show[] a good-faith request for reasonable accommodations." *Id*. at 423.

In Plaintiff's original charge of discrimination, he stated that because of his neck issues he "requested a helper so that [he] could continue to perform [his] duties despite [his] disabilities[,] but [his] request was denied." ECF No. 1-2 at 1. Such a request for an accommodation falls within the scope of the ADA's protected activities. Therefore, Plaintiff has made a plausible showing as to the first element.

Second, Plaintiff needed to show Defendant knew that Plaintiff was exercising protected rights. Here, Plaintiff's communication was directed at Defendant-employer. By denying Plaintiff's request for a helper, Defendant-employer acknowledged receipt of the request. Therefore, it knew Plaintiff was making an accommodation request.

The third element requires a showing that Defendant took adverse employment action against Plaintiff, or a showing that Plaintiff was subject to retaliatory harassment. Plaintiff has pled sufficient facts to show both. First, Plaintiff was suspended and then terminated after making the accommodation request. Second, Plaintiff included facts that make a plausible showing of harassment. It appears Plaintiff's supervisor, on multiple occasions, accused Plaintiff of faking an injury while Plaintiff was seeking assistance in the workplace. ECF No. 1-1 at 7, 9-10.

Finally, Plaintiff needed to make a plausible causation link between the accommodation request and the adverse employment action. The timing Plaintiff alleges, alone, does not evince a causal connection. However, there is a relatively close proximity between Plaintiff's FMLA leave,

15

request for a helper, and then his suspension and termination. It appears to the Court these events all took place within the span of seven months. ECF No. 1-2 at 1. That proximity, coupled with the comments allegedly made by a supervisor indicating he believed Plaintiff was not being honest regarding his injuries, leads the Court to believe Plaintiff has met the plausibility standard. Of course, the burden-shifting framework will allow Defendant-employer to present its non-retaliatory justifications at the appropriate time. The Court therefore **RECOMMENDS** Plaintiff's claim for retaliation under the ADA be allowed to proceed.

## IV.     CONCLUSION

In short, the undersigned **RECOMMENDS** allowing two claims to proceed: Plaintiff's age-based discrimination claim and his disability-based retaliation claim. The undersigned further **RECOMMENDS DISMISSING** Plaintiff's age-based retaliation claim and disability-based discrimination claim.

RESPECTFULLY SUBMITTED this the 27th day of June, 2023.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**